CARD *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE QUINEBAUG BANK.

The plaintiff, under an agreement with the owner of land, which was encumbered by a mortgage to the defendant, erected buildings on such land, which enhanced its value $——, and to perfect his lien upon said premises, filed his certificate with the town clerk of the town in which said land was situated, pursuant to the requirements of the act for " securing to mechanics a lien on land and buildings." The owner having afterwards further incumbered said land by other mortgages, the defendant, by purchase and foreclosure, obtained a clear title to said premises, except as against the plaintiff. On a bill in equity, praying for general relief, but which contained no offer to redeem prior incumbrances; held, that such bill ought to be dismissed.

THIS was a bill in chancery, brought by Simeon W. Card, against the President, Directors and Company of the Quinebaug Bank. The facts in the case appear from the report of the committee, appointed by the court to ascertain them. They are substantially as follows :

About the first day of October, 1849, the plaintiff, under a contract with one Tarbox, commenced building a dwelling-house on land owned by said Tarbox, situated in the town of Lisbon, and then in his possession. The plaintiff furnished all the materials for said house, and completed the same, on the eighth day of May, 1848. The stipulated price for building said house and furnishing said materials, was eight hundred and twenty-five dollars.

On the 23d day of said May, the plaintiff filed his certificate with the town clerk of Lisbon, in all respects according to law, and claiming a lien on the house, and the land on which it stood, for eight hundred and seventy-five dollars.

On the 15th day of March, 1847, the plaintiff entered into another contract with said Tarbox, for the building of a carpenter's shop, on a portion of the same premises, under which he proceeded, until he had expended thereon, in labor and materials, five hundred dollars, but never entirely completed

said shop. The land, on which said two buildings were erected, formed part of a large tract, described and set forth in the plaintiff's bill, on which was a valuable water privilege, with an establishment for manufacturing cotton cloth, and a number of dwelling-houses and other buildings, and costing originally, more than seventy thousand dollars.

When the plaintiff commenced work upon said two buildings, said estate was encumbered by a mortgage to the Norwich Savings Bank, for the sum of ten thousand dollars, and a mortgage to the defendants, for fifteen thousand dollars.

The dwelling-house, when completed, was worth eight hundred and seventy-five dollars, exclusive of the piece of land on which it stood, (which was worth fifty dollars,) and it increased the value of said manufacturing estate eight hundred and seventy-five dollars. Said carpenter's shop, when the plaintiff ceased work thereon, increased the value of said estate five hundred dollars.

Prior to the 16th day of October, 1850, the Savings Bank foreclosed their mortgage, making all subsequent incumbrancers parties, except the plaintiff, and getting a clear title, except as against him. On said 16th day of October, the Quinebaug Bank paid the Savings Bank the amount due on their mortgage, took a release deed from them, and went into possession of the premises. Prior to the same day, said bank had foreclosed all incumbrancers, subsequent to themselves, except the plaintiff, and said decree had taken effect. Said bank continued in the possession of said estate until ——— 1852, when they sold the same for twenty-seven thousand five hundred dollars. The income therefrom, while in their hands, was not sufficient to pay the expense of taking care of the same and the money advanced for the insurance of the buildings.

During said time, the plaintiff was permitted by them to lease said dwelling-house, and he received in rent, part payment and extinguishment of his said lien of one hundred

and twenty dollars. But he received nothing beside said sum for the erection of said buildings.

The value of said estate in the spring of the year 1848, when the plaintiff finished his work under said contract, was thirty-five thousand dollars. From that time, until the sale of the property at public auction, the same gradually depreciated in value. Its value, when it went into the possession of said bank, was not proved, but in the management and sale of said property, said bank acted in good faith, and there was no proof that, at any time, while the property remained under the control of said bank, they were offered, or could have obtained for it, a larger sum than it sold for, at public auction, as aforesaid.

The committee further found, that after the first day of October, 1847, when the plaintiff commenced work under said first mentioned contract, and before the first day of April, then next following, said Tarbox mortgaged said factory estate, in connection with other lands in said Lisbon, to sundry other persons, to secure debts, amounting, in the whole, to fifteen thousand five hundred dollars; which debts were purchased by said bank, of the several mortgagees, and transfers taken of the same, with the several mortgage securities, to themselves, and were still due from said Tarbox and remained the property of said bank.

The court accepted the report of the committee, and reserved the case for the advice of this court.

*Foster*, for the plaintiff.

*Edmund Perkins* and *Halsey*, for the defendant.

HINMAN, J. The plaintiff's bill, with the finding of the committee, shows a case, which would entitle the plaintiff to redeem all the incumbrances, which are prior to his lien, on his offering to do so. But he makes no such offer, and we do not understand that he has any intention of redeem-

ing. He asks that the prior incumbrancers be compelled to redeem him. This reverses the settled order in which parties, having incumbrances upon the same property, have right to redeem, or are bound to do so, and is unprecedented. The bill must be dismissed.

In this opinion the other judges concurred, except, STORRS, J., who gave no opinion, having been absent when the cause was argued.

Bill dismissed.